**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-3145

Jock Orville Autio,               *
                                  *
        Plaintiff-Appellee,       *
                                  *
United States of America,         *
                                  *
     Intervenor-Appellee,         * Appeal   from   the   United States
                                  * District Court for the
        v.                        * District of Minnesota.
                                  *
AFSCME, Local 3139,               *
                                  *
             Defendant,           *
                                  *
State of Minnesota,               *
                                  *
        Defendant-Appellant.      *

Submitted:  March 9, 1998

Filed:   April 9, 1998

Before BEAM and HEANEY, Circuit Judges, and WATERS[1], District Judge.

---

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

HEANEY, Circuit Judge.

The State of Minnesota appeals the district court's denial of its motion to dismiss Jock Orville Autio's claims under the Americans with Disabilities Act (ADA) and other supplemental state law claims. Minnesota contends that Autio's claims should have been dismissed because the district court lacked jurisdiction. Specifically, Minnesota argues that the Eleventh Amendment acts as a bar to an ADA claim against a state in federal court. We conclude that the state was properly sued in federal court and affirm the district court.

I.

Plaintiff/appellee, Autio, worked as a store clerk in the Minnesota State Department of Administration's Central Store for Materials Management. On several occasions, Autio requested accommodations for various physical disabilities. According to Autio, Minnesota denied his requests. Autio also claims that his union, AFSCME, Local 3139, did not provide him any assistance in pursuing his claim. Autio argues that without accommodations his employment responsibilities aggravated his physical condition and caused him injury. Autio filed a claim alleging unlawful employment practices in violation of the ADA, 42 U.S.C. §§ 12101-12213; the Minnesota Human Rights Act, Minn. Stat. §§ 363.01-363.20; and the Minnesota Workers' Compensation Act, Minn. Stat. §§ 176.001-176.861.

Minnesota moved to dismiss on the grounds that the Eleventh Amendment barred Autio's ADA claims from being heard in federal court. Minnesota argued that once the ADA claims were dismissed, the court lacked subject matter jurisdiction to hear the remaining state law claims. The district court held that Minnesota's Eleventh Amendment immunity was lawfully abrogated by Congress and it could properly be sued in federal court. Minnesota appeals.

II.

Whether a complaint sufficiently states a cause of action is a legal question subject to de novo review. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (citing Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986)). In reviewing a motion to dismiss, we assume all facts alleged by a plaintiff are true. Id. Dismissal is only proper if it appears that a plaintiff is unable to prove any set of facts entitling the plaintiff to relief. Id. (citing Morton, 793 F.2d at 187).

Minnesota argues that the Eleventh Amendment to the United States Constitution bars Autio's claims.[2] Specifically, Minnesota contends that the ADA does not represent an appropriate congressional exercise of its enforcement power so as to override its Eleventh Amendment immunity.

Under the Eleventh Amendment, a state is not subject to suit in federal court by its own citizens. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). A state can, however, expressly waive its immunity to suit or Congress can abrogate a state's Eleventh Amendment immunity. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 239-41 (1985) (citations omitted). In this case, both parties agree that Minnesota has not waived its immunity to suit.

---

[2]The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Therefore, we must determine whether Congress properly abrogated Minnesota's Eleventh Amendment immunity.[3]

---

[3]Although Minnesota did not specifically raise Eleventh Amendment immunity as a defense to Autio's state law claims in the district court, it has properly raised this defense on appeal. See Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993) (subject matter jurisdiction may be raised at any time by a party to an action). Because Minnesota has not consented to suit in federal court based on Autio's state law claims, we lack jurisdiction to decide the supplemental state claims. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984) (under the Eleventh Amendment, a federal court lacks jurisdiction to hear supplemental state law claims against a state even if the court has jurisidction to hear the federal claims). Therefore, we only determine whether Congress properly abrogated Minnesota's Eleventh Amendment immunity under the ADA.

In Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1123 (1996), the Supreme Court set forth a two-part test to determine whether Congress has properly abrogated a state's Eleventh Amendment immunity. The first question is whether Congress unequivocally expressed an intent to abrogate Eleventh Amendment immunity. Id. (citing Green v. Mansour, 474 U.S. 64, 68 (1985)). The second question is whether Congress acted pursuant to a valid exercise of power. Id.

With regard to the first question, it is clear that in enacting the ADA, Congress unequivocally abrogated a state's Eleventh Amendment immunity from suit in federal court. See 42 U.S.C. § 12202 (under the ADA, "[a] State shall not be immune under the eleventh amendment"). Second, in determining whether Congress acted pursuant to a valid grant of power, we look to the Fourteenth Amendment because the ADA was explicitly enacted to provide equal protection to those with disabilities. 42 U.S.C. 12101(b)(4). Section 1 of the Fourteenth Amendment provides that a state may not "deny . . . any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Section 5 of the Fourteenth Amendment provides that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article." Id. § 5.

We now turn to whether Congress properly enacted the ADA under Section 5 of the Fourteenth Amendment. In Katzenbach v. Morgan, 384 U.S. 641, 651 (1966), the Supreme Court set forth a three-part test to determine whether Congress properly enacted legislation under Section 5 of the Fourteenth Amendment: (1) whether the

6

statute may be regarded as an enactment to enforce the Equal Protection Clause; (2)

whether it is plainly adapted in furthering that end; and (3) whether it is consistent, and not prohibited by, the letter and the spirit of the Constitution.

First, the ADA was clearly enacted to enforce the Equal Protection Clause.  42 U.S.C. § 12101(b)(4) (one purpose of the ADA was "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment . . . in order to address the major areas of discrimination faced day to day by people with disabilities").  Second, we believe that the ADA was plainly adapted to enforcing the Equal Protection Clause. Relying heavily on City of Boerne v. Flores, 117 S. Ct. 2157 (1997), Minnesota contends that the ADA is not "plainly adapted" to enforcing the Equal Protection Clause because it prohibits more than what a court might find unconstitutional.  In Flores, the Court struck down the Religious Freedom Restoration Act (RFRA) under Section 5 of the Fourteenth Amendment because, in part, the "legislative record lack[ed] examples of modern instances of generally applicable laws passed because of religious bigotry.  The history of persecution in this country detailed in the hearings mentions no episodes occurring in the past 40 years."  Id. at 2169 (citations omitted).  In this respect, the Court found that, in passing the RFRA, Congress was attempting to a make a substantive constitutional change, rather than enforcing a recognized Fourteenth Amendment right.  Id. at 2170.

"While preventative rules are sometimes appropriate remedial measures, there must be a congruence between the means used and the ends to be achieved.  The appropriateness of remedial measures must be considered

8

in light of the evil presented." <u>Id.</u> (citation omitted). Unlike the RFRA, the ADA clearly chronicles and directly addresses the discrimination people with disabilities have experienced and the "evils" those with disabilities continue to experience in modern day America. For example, the ADA and its legislative record illuminate the fact that approximately 43 million Americans have disabilities, that disability discrimination is still a pervasive problem in our society, that people with disabilities face isolation and segregation in all aspects of life, including employment, and that such discrimination costs the United

States billions of dollars in lost productivity and dependency each year. See, e.g., 42 U.S.C. § 12101(a)(1)-(9).[4]

In passing the ADA, Congress was not attempting to a make a substantive constitutional change. Rather, it was attempting to enforce a recognized Fourteenth Amendment right: equal protection. In Flores, the Court restated its long-held view that "[l]egislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional and intrudes into 'legislative spheres of autonomy previously reserved to the states.'" Flores, 117 S. Ct. at 2163 (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 455 (1976)). Congress is prohibited from determining "what constitutes a constitutional violation," id. at 2164, but it may enact legislation prohibiting conduct which a court itself may not deem

---

[4]Before enacting the ADA, Congress conducted exhaustive fact finding as to the level of disability discrimination in the United States. See, e.g., S. Rep. No. 101-116, at 6 (1989) (quoting testimony of Timothy Cook of the National Disability Action Center, concerning the adverse and pervasive effects of disability discrimination); id. at 7 (quoting the testimony of Judith Heumann (currently the head of the Office of Special Education and Rehabilitative Services for the United States Department of Education), detailing the significant discrimination she faced because of her disabilities); id. at 8 (citing the testimony of a Kentucky parent who was fired from her job because the son with whom she lived had AIDS); id. at 12 (citing testimony regarding inaccessibility issues faced by those with disabilities). In total, in addition to conducting numerous hearings, both the House and Senate cited seven reports or studies that clearly detailed the pervasive and serious effects of disability discrimination in modern day America. See id. at 6; H.R. Rep. No. 101-485, pt. 2, at 28, U.S. Code Cong. & Admin. News 1990, 267, 309-10 (1990).

unconstitutional.  We must afford congressional findings significant deference.  <u>Turner Broad. Sys., Inc. v. FCC</u>, 117 S. Ct. 1174, 1189 (1997) (citation omitted).

Unlike the RFRA struck down in Flores, the ADA is "plainly adapted" as a remedial measure even though each individual violation of the ADA may not in and of itself be unconstitutional. The remedies provided in the ADA are not so sweeping that they exceed the harms they are sought to redress. Because of the clear "evil" present in disability discrimination and the well-documented need for equal protection in this respect, the ADA is plainly adapted to the end of providing those with disabilities equal protection under the law.

Third, the ADA is consistent with the letter and spirit of the Constitution. In Seminole Tribe, although striking down a statute abrogating sovereign immunity under the Indian Commerce Clause, the Court recognized that Section "5 of the Fourteenth Amendment [has] allowed Congress to abrogate . . . immunity from suit guaranteed by that Amendment." Seminole Tribe, 116 S. Ct. at 1125.

Minnesota argues that Congress has exceeded its power in passing legislation that protects rights under Section 5 but is not related to a quasi-suspect or suspect classification. Nevertheless, other laws passed by Congress have been upheld as constitutionally abrogating Eleventh Amendment immunity even though the rights

12

protected are not grounded in a quasi-suspect or suspect classification.[5]  In this respect, the Seventh Circuit stated:

> The Eleventh Amendment does not insulate the states from suits in federal courts to enforce federal statutes enacted under the authority of the Fourteenth Amendment. . . .  Although the state argues that the ADA is outside the scope of the section 5, that  argument is refuted by . . . Congress's concern that disabled persons are victims of discrimination.  Invidious discrimination by governmental agencies . . . violates the  equal protection clause even if the discrimination is not racial, though racial discrimination was the original focus of the clause.  In creating a remedy against such discrimination, Congress was acting well within its powers under section 5, as the courts have concluded with respect to the Age Discrimination in Employment Act, which is similar to the ADA in forbidding a form of discrimination remote from the contemplation of the framers of the Fourteenth Amendment.

---

[5]For example, four other circuits have addressed the validity of the Age Discrimination in Employment Act, 29 U.S.C. § 621, and upheld it as a valid exercise of Congress's Section 5 power.  See Hurd v. Pittsburgh State Univ., 109 F.3d 1540, 1546 (10th Cir. 1997); Ramirez v. Puerto Rico Fire Serv., 715 F.2d 694, 698-700 (1st Cir. 1983); EEOC v. County of Calumet, 686 F.2d 1249, 1251-52 (7th Cir. 1982); Arritt v. Grisell, 567 F.2d 1267, 1271 (4th Cir. 1977).  This issue is currently before our court in Humenansky v. Regents of the University of Minnesota, No. 97-2302. Similarly, the four circuits that have addressed the issue have upheld the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, on the same grounds.  See Mitten v. Muscogee County Sch. Dist., 877 F.2d 932, 937 (11th Cir. 1989); Counsel v. Dow, 849 F.2d 731, 737 (2d Cir. 1988); David D. v. Dartmouth Sch. Comm., 775 F.2d 411, 421 n.7 (1st Cir. 1985); Crawford v. Pittman, 708 F.2d 1028, 1036-38 (5th Cir. 1983).

<u>Crawford v. Indiana Dep't of Corrections</u>, 115 F.3d 481, 487 (7th Cir. 1997) (internal citations omitted) (citations omitted).[6]

---

[6]In addition to the Seventh Circuit, <u>Crawford,</u> 115 F.3d at 487, two of our other sister circuits that have addressed the issue before us have also held that a state may be properly sued in federal court under the Americans with Disabilities Act.  <u>See</u> <u>Coolbaugh v. Louisiana</u>, 1998 WL 84123, at *6-*7 (5th Cir.  Feb. 27, 1998); <u>Clark v. California</u>, 123 F.3d 1267, 1270-71 (9th Cir. 1997), <u>petition for cert. filed</u>, 66 U.S.L.W. 3308 (Oct. 20, 1997) (No. 97-686).

Additionally, in enforcing a disabled person's rights, we believe that the ADA is consistent with the spirit and letter of the Constitution as evidenced by Supreme Court precedent. For example, in City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 444 (1985) (plurality opinion), the Court reasoned that although the disabled are not entitled to heightened scrutiny, "legislation . . . singling out the [disabled] for special treatment reflects the real and undeniable differences between the [disabled] and others," thereby allowing the disabled equal protection from "invidious discrimination." Id. at 442-47. Moreover, in Cleburne the Court underscored Congress's principal institutional competence in making decisions concerning the disabled's legal treatment: "How this large and diversified group is to be treated under the law is a difficult and often a technical matter, very much a task for legislators guided by qualified professionals and not by the perhaps ill-informed opinions of the judiciary." Cleburne, 473 U.S. at 442-43.

Therefore, we hold that the ADA represents a proper exercise of Congress's Section 5 enforcement power under the Fourteenth Amendment. As a result, Minnesota is not entitled to Eleventh Amendment immunity from actions brought pursuant to the ADA.

## III.

For the reasons discussed above, we affirm the district court's decision.

A true copy.

   Attest.

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.