150 F.3d 1055
 77 Fair Empl.Prac.Cas. (BNA) 521,
73 Empl. Prac. Dec. P 45,410, 128 Ed. Law Rep. 110,
98 Cal. Daily Op. Serv. 5415,
98 Daily Journal D.A.R. 7585
 James D. KEETON; John P. Keith; Robert C. Bay; Alfred F.
Soprano, on behalf of themselves and all other
persons similarly situated, Plaintiffs-Appellees,
v.
UNIVERSITY OF NEVADA SYSTEM; Carolyn Sparks; Shelley
Berkley; Jill Derby; James Eardley; Joseph Foley;
Dorothy Gallagher; Daniel Klaich; Madison Graves; Paul E.
Meacham, Defendants-Appellants.
 No. 97-17184.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 11, 1998.
Decided July 10, 1998.
 
 Marc P. Cardinalli, Asst. Gen. Counsel, University and Community College System of Nevada, Las Vegas, NV, for defendants-appellants.
 Paul V. Carelli, III, Carelli & Miller, Las Vegas, NV, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Nevada Lloyd D. George, District Judge, Presiding. D.C. No. CV-94-00333-LDG/RLH.
 Before: HALL and THOMAS, Circuit Judges, and MOSKOWITZ,[1] District Judge.
 THOMAS, Circuit Judge:
 
 
 1
 We consider in this case whether Congress had the power and intent to abrogate the states' Eleventh Amendment immunity from claims under the Age Discrimination in Employment Act. We conclude that Congress satisfied the prerequisites to abrogation, and affirm the district court's order so holding.
 
 
 2
 The plaintiffs, all educators and employees of the University of Nevada and the University of Nevada System, instituted the instant class action in the United States District Court for the District of Nevada on April 5, 1994 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"). Plaintiffs allege that the Defendants subjected full-time educators over the age of forty holding graduate degrees to inequitable and discriminatory treatment based on age. Plaintiffs requested monetary, injunctive, and declaratory relief.
 
 
 3
 Defendants moved to dismiss the action for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The district court granted the motion with regard to the Plaintiffs' Title VII claim, but denied the motion as to the ADEA cause of action, finding that Congress had abrogated the states' sovereign immunity pursuant to its authority under section 5 of the Fourteenth Amendment in enacting the 1974 amendments to the ADEA. We review this determination de novo, see Hyland v. Wonder, 117 F.3d 405, 413 (9th Cir.), amended on denial of reh'g by 127 F.3d 1135 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1166, 140 L.Ed.2d 177 (1998), and affirm.
 
 
 4
 * In Seminole Tribe v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the United States Supreme Court articulated a two-part test for determining if Congress has abrogated a state's immunity: "[F]irst, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power." Seminole Tribe, 517 U.S. at 55, 116 S.Ct. 1114 (citation and internal quotation marks omitted).
 
 
 5
 * The ADEA contains the "clear legislative statement" that the Supreme Court established as a prerequisite for congressional abrogation of Eleventh Amendment immunity even before its decision in Seminole Tribe, see, e.g., Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute."), superseded on other grounds by 42 U.S.C. § 2000d-7. Albeit in dictum, the Court has recognized Congress' intention in amending the ADEA to abrogate states' immunity: "[T]here is no doubt what the intent of Congress was: to extend the application of the ADEA to the States." EEOC v. Wyoming, 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983).
 
 
 6
 Every circuit which has considered the question, save one, has arrived at the same conclusion. See Goshtasby v. Board of Trustees of the Univ., 141 F.3d 761, 765-66 (7th Cir.1998) (reaffirming earlier decision that Congress "could not have made its desire to override the states' sovereign immunity clearer" in its 1974 amendments to the ADEA, unless Congress had explicitly stated it was abrogating sovereign immunity); Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1544 (10th Cir.1997) ("We have no reason to question our [earlier] decision ... that Congress intended to abrogate state sovereign immunity by enacting the 1974 amendments to the ADEA."); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 695 (3d Cir.1996) ("The [ADEA] simply leaves no room to dispute whether states and state agencies are included among the class of potential defendants when sued under the ADEA for their actions as 'employers.' "); Santiago v. New York State Dep't of Correctional Servs., 945 F.2d 25, 31 (2d Cir.1991) (including ADEA as example of "legislation that has clearly stated Congress' intention to abrogate states' immunity from damage actions in a variety of contexts") (dictum); Ramirez v. Puerto Rico Fire Serv., 715 F.2d 694, 701 (1st Cir.1983) ("[T]he ADEA's express authorization for the maintenance of suits against state employers comprises adequate evidence to demonstrate the congressional will that Eleventh Amendment immunity be abrogated."); but see Kimel v. Florida Bd. of Regents, 139 F.3d 1426, 1430-33 (11th Cir.1998) (Edmondson, J.).
 
 
 7
 We join the overwhelming majority of our sister circuits in holding that Congress clearly expressed its intention to abrogate states' immunity in private suits for violations of the ADEA. When enacted, the ADEA only applied to private employers. EEOC v. Elrod, 674 F.2d 601, 605-06 (7th Cir.1982). The 1974 amendments to the ADEA expanded the definition of "employee" to include "employees subject to the civil service laws of a State government." Fair Labor Standards Amendment of 1974, Pub.L. No. 93-259, 88 Stat. 74. With the specific inclusion of State governments in the 1974 amendments, Congressional intent could hardly be clearer.
 
 B
 
 8
 Contrary to defendants' assertions, Congress had the power to effectuate its abrogation intention, thus satisfying the second prong of Seminole. The legislative history and development of the ADEA clearly establish that Congress relied upon the enforcement clause of the Fourteenth Amendment in enacting the 1974 ADEA amendments.
 
 
 9
 Defendants rely on the ADEA's express invocation of the Commerce Clause for the proposition that Congress was not relying upon the Fourteenth Amendment as the source of its authority. However, Congress need not expressly invoke the Fourteenth Amendment in order to legislate pursuant to its Fourteenth Amendment enforcement powers. See Clark v. California, 123 F.3d 1267, 1271 (9th Cir.1997) (observing that "the constitutionality of action taken by Congress does not depend on recitals of powers which it undertakes to exercise"), cert. denied, U.S. ----, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998). Rather, Congress' power under section 5 of the Fourteenth Amendment broadly encompasses "appropriate legislation"--legislation that "may be regarded as an enactment to enforce the Equal Protection Clause, [that] is plainly adapted to that end, and [that] is not prohibited by but is consistent with the letter and spirit of the constitution [sic]." Katzenbach v. Morgan, 384 U.S. 641, 650-51, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966).
 
 
 10
 The 1974 amendments to the ADEA fulfill each of these three criteria. First, the legislative history of the amendments reveals Congress' purpose to extend to state and local government employees the protections against age-based discrimination in employment that private-sector workers had previously enjoyed, protections that were aimed at ending the arbitrary, discriminatory government conduct that the Equal Protection Clause targets. See Senate Comm. on Labor and Public Welfare, S.Rep. No. 93-690, House Comm. on Education and Labor, H. Rep. No. 93-913 (1974), reprinted in 1974 U.S.C.C.A.N. 2811, 2849.
 
 
 11
 Second, the 1974 ADEA amendments are "plainly adapted" to furthering the aims of the Equal Protection Clause. The amendments' practical effect was to enlarge the ADEA's antidiscrimination guarantees by placing public and private employees on the same footing. The existence of age-based discrimination in government employment gave Congress an ample rationale for intruding upon any state interests that the previously private character of the ADEA's prohibitions may have served. See Ramirez v. Puerto Rico Fire Serv., 715 F.2d 694, 699 (1st Cir.1983). Finally, the remedies the 1974 amendments offer are not prohibited by, but are consistent "with the letter and spirit of the constitution." The absence of any judicial determination that the Equal Protection Clause forbids discrimination against older workers does not preclude Congress from enforcing the Equal Protection Clause by prohibiting such discrimination in the private and public sectors alike. See Katzenbach, 384 U.S. at 648, 86 S.Ct. 1717. A contrary result "would confine the legislative power in this context to the insignificant role of abrogating only those state laws that the judicial branch was prepared to adjudge unconstitutional, or of merely informing the judgment of the judiciary by particularizing the 'majestic generalities' of § 1 of the Amendment." Katzenbach, 384 U.S. at 648-49, 86 S.Ct. 1717 (citation and internal quotation marks omitted). Thus, the Defendants have not sustained their burden of establishing their entitlement to Eleventh Amendment immunity, see Hyland, 117 F.3d at 413.
 
 II
 
 12
 The district court correctly concluded that Congress abrogated the states' immunity in amending the ADEA pursuant to its Fourteenth Amendment enforcement authority. Accordingly, we affirm the order of the district court.
 
 AFFIRMED
 
 
 [1]
 Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation