# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2302

_____

| | | |
|---|---|---|
| John Humenansky, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| United States of America, | * | |
| | * | Appeal from the United States |
| Intervenor on Appeal, | * | District Court for the |
| | * | District of Minnesota. |
| v. | * | |
| | * | |
| Regents of the University of Minnesota, | * | |
| | * | |
| Defendant - Appellee, | * | |

_____

Submitted: March 9, 1998
Filed: August 11, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,* District Judge.

_____

LOKEN, Circuit Judge.

The Eleventh Amendment bars federal court jurisdiction over a suit between an unconsenting State and one of its citizens unless Congress has effectively abrogated the State's Eleventh Amendment immunity. See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). The University of Minnesota is "an instrumentality of the state" entitled to

_____

*The HONORABLE JOSEPH F. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

invoke Minnesota's Eleventh Amendment immunity.  See Treleven v. University of Minnesota, 73 F.3d 816, 818-19 (8th Cir. 1996).  John Humenansky brought this action in federal court, alleging that the University violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, when it laid him off in 1994.  The district court[1] dismissed, concluding that the suit is barred by the Eleventh Amendment because Congress neither intended to abrogate Eleventh Amendment immunity nor acted under § 5 of the Fourteenth Amendment in enacting 1974 amendments that extended the ADEA to cover public employers.  Humenansky appeals, supported by the United States as intervenor.  We affirm.

To determine whether a federal statute abrogates Eleventh Amendment immunity, we ask "first, whether Congress . . . unequivocally expressed its intent to abrogate the immunity, and second, whether Congress . . . acted pursuant to a valid exercise of power."  Seminole Tribe v. Florida, 116 S. Ct. 1114, 1123 (1996). The practical import of this inquiry is narrow, affecting only whether States may be sued in federal court for ADEA violations.  We review these questions of law *de novo*.

A. Congressional Intent To Abrogate.  The power to abrogate Eleventh Amendment immunity "implicates the fundamental constitutional balance between the Federal Government and the States."  Therefore, "Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 243 (1985).  The statute need not explicitly reference sovereign immunity or the Eleventh Amendment.  See  Dellmuth v. Muth, 491 U.S. 223, 233 (1989) (Scalia, J., concurring).  But its text must contain "unmistakably clear" language that States may be sued in federal court.  A general authorization for suit in federal court is not enough.  See Seminole Tribe, 116 S. Ct. at 1123-24.

---

[1]The HONORABLE PAUL A. MAGNUSON, Chief Judge of the United States District Court for the District of Minnesota.

The ADEA prohibits age discrimination in employment. The statute has its own recitation of prohibited conduct and covered employers. See 29 U.S.C. §§ 623, 630(b). But it contains a hybrid enforcement mechanism: 29 U.S.C. § 626(c) authorizes aggrieved persons to sue "in any court of competent jurisdiction" for relief under the ADEA, while 29 U.S.C. § 626(b) provides that the ADEA "shall be enforced in accordance with the powers, remedies, and procedures provided in" the Fair Labor Standards Act (FLSA). Among the cross-referenced FLSA enforcement statutes is 29 U.S.C. § 216(b), which authorizes aggrieved employees to sue for damages and liquidated damages "in any Federal or State court of competent jurisdiction." See generally Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125 (1985).

Initially, both the FLSA and the ADEA excluded States and their political subdivisions from the statutory definitions of covered employers. In 1966, Congress amended the FLSA definition of employer to include certain state and local employees. The Supreme Court held in Employees of the Dept. of Public Health & Welfare v. Missouri, 411 U.S. 279, 285 (1973), that this amendment did not evidence sufficiently clear congressional intent to abrogate Eleventh Amendment immunity because Congress did not correspondingly amend the enforcement provision, 29 U.S.C. § 216(b):

> [W]e have found not a word in the history of the 1966 amendments to indicate a purpose of Congress to make it possible for a citizen of that State or another State to sue the State in the federal courts. . . . It would . . . be surprising . . . to infer that Congress deprived Missouri of her constitutional immunity without changing the [provision] under which she could not be sued or indicating in some way by clear language that the constitutional immunity was swept away.

Congress responded in 1974 by amending § 216(b) to permit actions "against any employer *(including a public agency) in any Federal or State court*." Pub. L. No. 93-259, § 6, 88 Stat. 61 (emphasis added). The amendment was intended to overturn the

-3-

Eleventh Amendment ruling in Employees.  See H.R. REP. NO. 93-259, reprinted in 1974 U.S.C.C.A.N. 2811, 2853.  Though the intent-to-abrogate inquiry focuses on statutory text, not legislative history, we agree with numerous other circuits that the 1974 amendments to § 216(b) reflect an unmistakably clear textual intent to abrogate Eleventh Amendment immunity from FLSA suits in federal court.  See, e.g., Reich v. State of New York, 3 F.3d 581, 590-91 (2d Cir. 1993);  Hale v. State of Arizona, 993 F.3d 1387, 1391-92 (9th Cir. 1993); cf. Fitzpatrick v. Bitzer, 427 U.S. 445, 449 n.2, 452 (1976) ("congressional authorization to sue the State . . . clearly present" when Title VII amended to allow suits against "governments [and] governmental agencies").

At the same time Congress amended the FLSA's § 216(b), it expanded the ADEA's definition of "employer" to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State."  Pub. L. No. 93-259, § 28, 88 Stat. 74, codified at 29 U.S.C. § 630(b)(2).  Because § 626(b) of the ADEA incorporates § 216(b), the 1974 amendments amended part of the ADEA enforcement mechanism as well as the definition of employer.  But left unamended was 29 U.S.C. § 626(c) -- it  still contains only a general authorization to enforce the ADEA "in any court of competent jurisdiction."  Thus, we face a conundrum.  If we look only at § 626(c), the 1974 ADEA amendments are just like the 1966 FLSA amendments at issue in Employees -- Congress now covered public employers but did not expressly allow them to be sued in federal court.  On that basis, we would conclude no intent to abrogate, following the reasoning in Employees as reinforced by the Court's later decisions in Atascadero and Dellmuth.  On the other hand, if we look at the ADEA's enforcement scheme from the perspective of its cross-reference to the FLSA, Congress cured the abrogation deficiency found in Employees by amending § 216(b) at the same time § 630(b)(2) was amended to include States and other public employers.

Quite properly, the United States as intervenor emphasizes the 1974 amendment to § 216(b) in arguing clear intent to abrogate, while the University counters by emphasizing the lack of an amendment to § 626(c).  Both are weighty arguments

pointing in diametrically opposite directions. Congress in 1974 focused on the Employees decision, intended to legislatively overrule it as to the FLSA, and amended the ADEA to cover States and their political subdivisions. If Congress intended to abrogate Eleventh Amendment immunity for the ADEA as well as the FLSA, and recognized that Employees required that intent to abrogate be reflected by amending the enforcement provisions, why not amend § 626(c), the ADEA provision that most directly addresses the question of federal court jurisdiction? There are only two rational answers to that question -- no intent to abrogate for the ADEA, or legislative oversight, which is not a proper basis for finding "unmistakably clear" intent to abrogate in the statute's text. See Dellmuth, 491 U.S. at 232 ("permissible inference" of an intent to abrogate is not enough). Thus, we conclude the district court correctly held that the ADEA's text does not reflect an unmistakably clear intent to abrogate Eleventh Amendment immunity. We disagree with other circuits that have found an intent to abrogate without analyzing this aspect of the 1974 amendments.[2]

B. Congressional power to abrogate. Even if the ADEA's text contained a sufficiently clear expression of intent to abrogate, we conclude that Congress lacked the power to abrogate Eleventh Amendment immunity. The Commerce Clause, part of Article I of the Constitution, cannot be used to abrogate the Eleventh Amendment's limitation on the Article III jurisdiction of the federal courts. See Seminole Tribe, 116

---

[2]See Keeton v. University of Nevada System, __ F.3d __, 1998 WL 381432 at *2 (9th Cir. July 10, 1998); Goshtasby v. Board of Trustees, 141 F.3d 761, 765-66 (7th Cir. 1998); Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1544 (10th Cir. 1997); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 695 (3d Cir. 1996) (dictum); Santiago v. New York State Dep't of Correctional Servs., 945 F.2d 25, 31 (2nd Cir. 1991) (dictum), cert. denied, 502 U.S. 1094 (1992); Ramirez v. Puerto Rico Fire Serv., 715 F.2d 694, 701 (1st Cir. 1983); but see Kimel v. State of Florida Board of Regents, 139 F.3d 1426 (11th Cir. 1998) (divided panel holds Eleventh Amendment immunity not abrogated, one judge concluding there was no clear intent to abrogate, and one judge concluding there was no power to abrogate).

S. Ct. at 1131-32, overruling Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989). However, § 5 of the Fourteenth Amendment is a valid basis for abrogating Eleventh Amendment immunity because that Amendment was intended to "fundamentally alter[] the balance of state and federal power struck by the Constitution." Id. at 1125, citing Fitzpatrick, 427 U.S. at 452-56. Section 5 "is a positive grant of legislative power" to enforce § 1 of the Fourteenth Amendment. City of Boerne v. Flores, 117 S. Ct. 2157, 2163 (1997), quoting Katzenbach v. Morgan, 384 U.S. 641, 651 (1966). Those sections provide in relevant part:

> Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> \*   \*   \*   \*   \*

> Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

The ADEA has been upheld as a valid exercise of Congress' power under the Commerce Clause. See E.E.O.C. v. Wyoming, 460 U.S. 226 (1983). The power-to-abrogate question turns on whether the ADEA is also a valid exercise of Congress' powers under § 5. "Because such legislation imposes congressional policy on a State involuntarily, and because it often intrudes on traditional state authority, we should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." Gregory v. Ashcroft, 501 U.S. 452, 469 (1991) (quotation omitted). Though Congress need not expressly articulate an intent to legislate under § 5, a court must "be able to discern some legislative purpose or factual predicate that supports the exercise of that power." Wyoming, 460 U.S. at 243 n.18. The issue has been more clearly framed by the Supreme Court's recent decision in City of Boerne,

in which the Court invalidated the Religious Freedom Restoration Act of 1993 as exceeding Congress' authority under § 5.

Humenansky and the United States argue that the ADEA is a valid exercise of Congress' § 5 power. The Fourteenth Amendment's Equal Protection Clause protects against invidious governmental discrimination on grounds other than race. The ADEA prohibits invidious discrimination against government employees on account of their age. Therefore, they argue, ADEA is "plainly adapted" to enforcing the Equal Protection Clause. Katzenbach v. Morgan, 384 U.S. at 651. They further argue that, in enforcing the Fourteenth Amendment, Congress is not limited to prohibiting what the courts have declared unconstitutional under the Equal Protection Clause. Indeed, Congress can legislate a stricter standard of conduct than that required by the Equal Protection Clause when legislating pursuant to § 5. The only limit on Congress' § 5 power to enforce the Equal Protection Clause with "appropriate legislation" is that the federal statute must be "consistent with the letter and spirit of the constitution." Id. at 656. A number of circuit decisions have accepted this argument, but the three circuits to consider the issue since City of Boerne have reached conflicting conclusions.[3]

If this argument is correct, Congress' § 5 power to enforce the Equal Protection Clause is virtually unlimited, because it is not tied to enforcing judicially recognized equal protection violations. Age is not a suspect class entitled to a heightened level of equal protection scrutiny. See Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307 (1976). In Murgia, the Court upheld a mandatory retirement age for Massachusetts state police officers, concluding the statute "clearly [met] the requirements of the Equal

---

[3]Compare Kimel, 139 F.3d at 1445-48 (Cox, J., concurring), with Goshtasby, 141 F.3d at 769-72, and Keeton, 1998 WL 381432 at *2-3. See also Hurd, 109 F.3d at 1544-46, aff'g 821 F. Supp. 1410, 1412 (D. Kan. 1993); Blanciak, 77 F.3d at 695; Ramirez, 715 F.2d 694, 698-700 (1st Cir. 1983); Arritt v. Grisell, 567 F.2d 1267, 1270-71 (4th Cir. 1977).

Protection Clause" because it rationally furthered the reasonable state objective of ensuring a physically fit police force. 427 U.S. at 314-15. In <u>Vance v. Bradley</u>, 440 U.S. 93 (1979), the Court upheld a federal statute mandating that Foreign Service officers retire at age sixty against an equal protection challenge, concluding the classification was valid under rational basis review. The Equal Protection Clause applies not only to statutes such as those at issue in <u>Murgia</u> and <u>Vance</u>, but also to the day-to-day employment decisions of a myriad of state officers and agencies. But these isolated executive actions are unconstitutional only if they are the product of intentional discrimination that "fail[s] to comport with the requirements of equal protection." <u>Batra v. Board of Regents</u>, 79 F.3d 717, 721 (8th Cir. 1996). Thus, there has been no judicial definition of invidious, that is, unconstitutional age discrimination, and given the many economic and social factors that may justify adverse employment action based upon age in a particular situation,[4] it seems likely that only a few isolated, egregiously irrational instances of age discrimination would violate the Equal Protection Clause. However, under this broad interpretation of § 5, Congress defines what is prohibited, and so long as it is legislating to protect a class of government employees against what Congress defines as "invidious discrimination," it is acting "consistent with the letter and spirit" of the Equal Protection Clause.

Not surprisingly, there are persuasive indications that the Supreme Court would not embrace this expansive view of Congress' § 5 power to enforce the Equal Protection Clause. When the Court upheld the ADEA as valid under the Commerce

---

[4]Depending upon the situation, adverse employment action may be justified to save money by eliminating a higher paid worker who is not more productive, to meet the physical demands of a job, to adapt more quickly to rapidly changing technology, to promote healthy turnover of a work force, to satisfy customer demands for a younger work force, and so forth. These are rationales that Congress can reject using its legislative powers under the Commerce Clause, but they are sufficiently valid in most circumstances to withstand Equal Protection Clause review. In sum, the ADEA does not primarily target equal protection violations, nor are its prohibitions tailored to meeting equal protection concerns.

Clause in <u>Wyoming</u>, the narrow majority expressly declined to decide this § 5 issue. <u>See</u> 460 U.S. at 243 & n.18. But the four dissenters reached the issue and concluded the ADEA exceeds Congress' § 5 power. After explaining that the Wyoming statute in question, like the mandatory retirement programs at issue in <u>Murgia</u> and <u>Vance</u>, was not invalid under the Fourteenth Amendment, the dissenters concluded:

> [T]he Age Act can be sustained only if we assume first, that Congress can define rights wholly independent of our case law, and second, that Congress has done so here. I agree with neither proposition.
>
> Allowing Congress to protect constitutional rights statutorily that it has independently defined fundamentally alters our scheme of government. . . . There is no hint in the body of the Constitution ratified in 1789 or in the relevant Amendments that every classification based on age is outlawed. Yet there is much in the Constitution and the relevant Amendments to indicate that states retain sovereign powers not expressly surrendered, and these surely include the power to choose the employees they feel are best able to serve and protect their citizens.
>
> And even were we to assume, *arguendo*, that Congress could redefine the Fourteenth Amendment, I would still reject the power of Congress to impose the Age Act on the states when Congress, in the same year that the Age Act was extended to the states, passed mandatory retirement legislation of its own for law enforcement officers and firefighters.

460 U.S. at 262-63 (Burger, C.J., dissenting). Similarly, Justice Stewart, concurring in part for himself, Chief Justice Burger, and Justice Blackmun in <u>Oregon v. Mitchell</u>, 400 U.S. 112, 296 (1970), explained that § 5 gives Congress "the means of eradicating situations that amount to a violation of the Equal Protection Clause," but not the power "to determine as a matter of substantive constitutional law what situations fall within the ambit of the clause."

Chief Justice Burger's dissent in <u>Wyoming</u> reads like a preview of the Court's opinion in <u>City of Boerne</u>. There, the Court first explained that Congress' § 5 powers, while broad, are not without limits:

> Congress' power under § 5, however, extends only to "enforcing" the provisions of the Fourteenth Amendment. The Court has described this power as "remedial." The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States. Legislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the Clause. Congress does not enforce a constitutional right by changing what the right is. It has been given the power "to enforce," not the power to determine what constitutes a constitutional violation.

117 S. Ct. at 2164 (citation omitted). "If Congress could define its own powers by altering the Fourteenth Amendment's meaning," the Court continued, "no longer would the Constitution be 'superior paramount law, unchangeable by ordinary means.'" <u>Id.</u> at 2168, quoting <u>Marbury v. Madison</u>, 1 Cranch 137, 177 (1803), and declining to expansively construe <u>Katzenbach v. Morgan</u>. The Court went on to conclude that RFRA exceeded Congress' § 5 power because it "is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior," and because that statute "is not designed to identify and counteract state laws likely to be unconstitutional because of their treatment of religion." <u>Id.</u> at 2170-71. We conclude the ADEA likewise exceeds Congress's § 5 powers as defined in <u>City of Boerne</u>, for the reasons set forth in Chief Justice Burger's dissenting opinion in <u>Wyoming</u>. Accord <u>Kimel</u>, 139 F.3d at 1446-48 (Cox, J., concurring); <u>MacPherson v. University of Montevallo</u>, 938 F. Supp. 785, 789 (N.D. Ala. 1996).[5]

---

[5]In dissenting on this issue, Judge Bataillon relies in part on the panel opinion in <u>Autio v. AFSCME, Local 3139</u>, 140 F.3d 802 (8th Cir. 1998). That opinion was

The judgment of the district court is affirmed.

BATAILLON, District Judge, dissenting:

I respectfully dissent from the court's decision concluding that the text of the Age Discrimination in Employment Act ("ADEA") does not reflect an unmistakably clear intent by Congress to abrogate the states' Eleventh Amendment immunity. I also must dissent from the court's decision that the ADEA exceeds Congress' § 5 enforcement power under the Fourteenth Amendment.

Prior to the appeal in this case, five sister circuits have concluded that Congress had the intent to abrogate the states' Eleventh Amendment immunity from claims filed under the Age Discrimination in Employment Act. *Hurd v. Pittsburgh State Univ.,* 109 F.3d 1540, 1544 (10th Cir. 1997) (declaring "Congress intended to abrogate state sovereign immunity by enacting the 1974 amendments to the ADEA."); *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 695 (3d 1996) (declaring "The [ADEA] simply leaves no room to dispute whether states and state agencies are included among the class of potential defendants when sued under the ADEA for their actions as 'employers.'"); *Santiago v. New York State Dep't of Correctional Servs.,* 945 F.2d 25, 31 (2d Cir. 1991) (declaring in dictum that the ADEA is an example of "legislation that has clearly stated Congress' intention to abrogate states' immunity from damage actions in a variety of contexts."); *Davidson v. Board of Governors*, 920 F.2d 441, 443 (7th Cir. 1990) (concluding "Unless Congress had said in so many words that it was abrogating the states' sovereign immunity in age discrimination cases -- and that degree of explicitness is not required . . . -- it could not have made its desire to override the states' sovereign immunity clearer."); and *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 701 (1st Cir. 1983) (concluding "[T]he ADEA's express authorization for the maintenance of suits against state employers comprises adequate evidence to

vacated when we granted the petition for rehearing en banc on July 7, 1998.

-11-

demonstrate the congressional will that Eleventh Amendment immunity be abrogated.").

Since this case was argued, the Seventh Circuit has reaffirmed its earlier decision in *Davidson*, and the Ninth Circuit has joined the overwhelming majority of circuits in holding that Congress clearly expressed its intention to abrogate states' immunity in private suits for violations of the ADEA. *Goshtasby v. Board of Trustees.,* 1998 WL 169755, *4 (7th Cir. April 13, 1998) (holding "[W]e reaffirm our position that Congress made its intention to abrogate the states' sovereign immunity unmistakably clear in the ADEA's 1974 amendment."); and *Keeton et al. v. University of Nevada Sys.,* 1998 WL 381432, *3 (9th Cir. July 10, 1998)(holding that "Congress abrogated the states' immunity in amending the ADEA pursuant to its Fourteenth Amendment enforcement authority."). The weight of reason set forth in these seven circuit court opinions compels me to dissent from the majority's decision.

To determine whether Congress abrogated the states' Eleventh Amendment immunity in enacting the ADEA, a Court must first decide whether Congress has "unequivocally expresse[d] its intent to abrogate the immunity." *Seminole Tribe v. Florida,* 517 U.S. 44, 55 (1996). However, Congress' intent in the statutory text does not require explicit reference to state sovereign immunity or to the Eleventh Amendment. *Dellmuth v. Muth*, 491 U.S. 223, 233 (1989). Direct reference to the "state" in the text of a federal statute may suffice to evidence Congress' intent to abrogate the states' sovereign immunity from suit. *Seminole Tribe,* 517 U.S. at 57 (concluding that "the numerous references to the 'State' in the text of [the statute] make it indubitable that Congress intended through the Act to abrogate the States' sovereign immunity from suit.").

When Congress enacted the ADEA in 1967, the Act applied only to private employers. *EEOC v. Elrod.,* 674 F.2d 601, 605-06 (7th Cir. 1982). In 1974, Congress expanded the ADEA's definition of "employer" to include "a State or political

subdivision of a State and any agency or instrumentality of a State."  Pub. L. No. 93-259, §28(a)(2), 88 Stat. 74, codified at 29 U.S.C. § 630(b)(2).  Congress also amended the definition of "employee" to include employees subject to the civil service laws of a State government.  *Id*., § 28(a)(4), 88 Stat. 74, codified at 29 U.S.C. § 630(f).  The direct textual references to  "state" -- state, political subdivision of a state, agency of a state, instrumentality of a state, and state government  -- in the 1974 amendment to the ADEA clearly expressed Congress' intent to abrogate states' sovereign immunity.  *Cf. Seminole Tribe,* 517 U.S. at 57.

Under the *Seminole Tribe* test the second inquiry is whether Congress has acted "pursuant to a valid exercise of power" under the Fourteenth Amendment.  *Id.* at 55. The Supreme Court has declared that "§5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." *Katzenbach v. Morgan,* 384 U.S. 641, 651 (1966).  Although the 1974 amendment does not explicitly refer to the Fourteenth Amendment, there is no requirement that it do so. *EEOC v. Wyoming*, 460 U.S. at 243 n. 18 (declaring congress need not "anywhere recite the words 'section 5' of the 'Fourteenth Amendment' or 'equal protection'. . . 'for the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise'") (quoting *Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144 (1948)).

To determine whether Congress enacted appropriate legislation under § 5 of the Fourteenth Amendment, the Supreme Court established a three-part test in *Katzenbach v. Morgan.*  First, a court must determine whether a statute may be regarded as an enactment to enforce the Equal Protection Clause.  Second, a court must determine whether the statute is plainly adapted to enforce the Equal Protection Clause.  Third, a court must determine whether the statute is consistent, and not prohibited by, the letter and spirit of the Constitution.  384 U.S. at 650-51.   Recently, the Supreme Court supplemented the analysis by directing courts to examine whether the statute creates

new constitutional rights through legislation or only deters and remedies constitutional violations. *City of Boerne v. Flores,* 117 S. Ct. 2157, 2163 (1997). A statute is deemed appropriate legislation if it deters or remedies constitutional violations. *Id.*

The ADEA was enacted to enforce the Equal Protection Clause. In enacting the ADEA, Congress announced "[T]he purpose of this [Act is] to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621. In 1973, a Senate committee report found "[t]here is evidence that, like the corporate world, government managers also create an environment where young is sometimes better than old." *EEOC v. Wyoming,* 460 U.S. at 233 *(quoting* Senate Special Committee on Aging, *Improving the Age Discrimination Law*, 93d Cong., 1st Sess., 14 (Comm. Print. 1973), Legislative History 215, 231). In 1974, Congress responded by amending the ADEA to provide federal, state, and local government workers with the same protections against age-based discrimination afforded to employees in the private sector. 29 U.S.C. §§ 630(b) and 631(b); *EEOC v. Wyoming,* 460 U.S. at 233 n.5.

Today, the majority concludes that the ADEA is not plainly adapted because it prohibits more than what an Article III court may find unconstitutional under the Fourteenth Amendment.[6] In reaching this conclusion, the majority relies, in part, on *City of Boerne.* The majority's reliance on *City of Boerne* is dubious. The federal statute challenged as unconstitutional was the Religious Freedom Restoration Act ("RFRA"), 107 Stat. 1488. 42 U.S.C. § 2000bb *et seq.* The Court found that the RFRA was an unconstitutional exercise of Congress' § 5 power because the statute was "so out of proportion to a supposed remedial or preventive object that it cannot be

---

[6] Recently, the United States Court of Appeals for the Eleventh Circuit held that the ADEA was not a proper exercise of Congress' section 5 power because the ADEA confers more extensive rights than those provided by the Fourteenth Amendment. *Kimel v. State of Fla. Bd. Of Regents.,* 139 F.3d 1426, 1446-47 (11th Cir. 1998).

understood as responsive to, or designed to prevent, unconstitutional behavior." *City of Boerne,* 117 S.Ct. at 2170. As such, the Court found that Congress exceeded its §5 power in enacting the RFRA because the statute attempted a "substantive change in constitutional protections." *Id.*

Recently, an Eighth Circuit panel considered whether Congress had properly enacted the Americans with Disabilities Act ("ADA") under § 5 of the Fourteenth Amendment. *Autio v. AFSCME, Local 3139,* 140 F.3d 802, 805-06 (8th Cir. 1998). In determining that Congress had, the panel distinguished the RFRA from the ADA by declaring:

> Unlike the RFRA, the ADA clearly chronicles and directly addresses the discrimination people with disabilities have experienced and the 'evils' those with disabilities continue to experience in modern day America. . . . Unlike the RFRA struck down in *Flores*, the ADA is 'plainly adapted' as a remedial measure even though each individual violation of the ADA may not in and of itself be unconstitutional. The remedies provided in the ADA are not so sweeping that they exceed the harms they are sought to redress. Because of the clear "evil" present in disability discrimination and the well-documented need for equal protection in this respect, the ADA is plainly adapted to the end of providing those with disabilities equal protection under the law.

*Id.* at 805.

The analysis in *Autio* is directly applicable to this case. In the text of the ADEA statute, Congress directly addressed the arbitrary discrimination older employees face in the workplace. *See* 29 U.S.C. § 621(b). The remedies provided in the ADEA are not "so out of proportion" to the problems of arbitrary age discrimination identified by Congress. Rather, the documented existence of age-based discrimination in private and public employment induced Congress to intrude not only upon the interests of private employers but also upon state interests through the enactment of the 1974 amendments.

-15-

In light of the well-documented need for equal protection of older workers, I believe the ADEA is plainly adapted to the end of providing older workers equal protection under the law.

Finally, the 1974 amendments to the ADEA are fully consistent with both the letter and the spirit of the Constitution. The Constitution guarantees equal protection under the law. Arbitrary and intentional discrimination on the basis of age violates the Equal Protection Clause. *Gregory v. Ashcroft,* 501 U.S. at 470-71. Simply because the Supreme Court does not elevate age to a suspect or quasi-suspect classification does not mean that Congress cannot enforce the Equal Protection Clause through the enactment of a statute aimed directly at prohibiting arbitrary age discrimination in employment. *Goshtasby,* 1998 WL 169755, *10 (7th Cir. April 13, 1998). I concur with the Seventh Circuit in concluding that Congress does not exceed its enforcement power under § 5 by enacting legislation designed to guarantee equal protection for all persons regardless of the level of judicial scrutiny afforded to them. *Id.*

For the foregoing reasons, I respectfully dissent and would reverse the order of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.