## Judy JACOBSEN
v.
## Michael L. TILLMANN, in his official capacity as Acting Executive Director of the Minnesota Board of Teaching;[1] and the Minnesota Board of Teaching.
### No. 97–CV–1541 (JMR/FLN).

United States District Court,
D. Minnesota.

Aug. 31, 1998.

---

9. La. Rev. Stat. 47:1908; La. Rev. Stat. 33:4713.

10. La. Const. Art. 6 § 5(G).

1. Judith A. Wain was the Executive Director of the Minnesota Board of Teaching. On her de-

parture, Michael L. Tillmann was named as its Acting Executive Director. He is substituted, as a defendant, pursuant Rule 25(d)(1) of the Federal Rules of Civil Procedure.

**1020**

Sonja D. Kerr, Kerr Law Office, Inver Grove Heights, MN, for plaintiff.

Bernard E. Johnson, MN Attorney General, St. Paul, MN, for defendants.

## ORDER

ROSENBAUM, District Judge.

The plaintiff, Judy Jacobsen, wishes to be certified as a teacher. She has taken the math competency portion of the Minnesota Teacher Qualification Test 14 times. She took it in its original form. She has taken it with every recognized and certified form of reasonable accommodation, including being given two hours, instead of one; being provided a "reader"; being permitted to use scratch paper; and being permitted to mark

her answers on the examination book itself, rather than on an accompanying answer sheet.

The plaintiff has shown herself unable to pass the teacher qualification test. A person who cannot pass this test is not given a license to teach children by the Minnesota Board of Teaching, an entity established by the State of Minnesota to qualify, certify, and license competent teachers.

Ms. Jacobsen asks this Court to declare her to be a qualified person with a disability. She seeks a mandatory injunction directing the Minnesota Board of Teaching to award her a license to teach; directing the Board to use another standard to consider her qualification to teach; or directing the Board to recognize her self-determined competence and grant her a teacher's license. For the reasons set forth below, the Court declines to do so, and grants summary judgment in favor of defendants.

## I. Background

Plaintiff, Judy Jacobsen, has been trained as an elementary school teacher. She has been diagnosed with dyslexia[2] and dyscalculia,[3] each a learning disability. She is presently employed by Independent School District No. 625 ("ISD No. 625") as an elementary school teacher at Nokomis Montessori School located in St. Paul, Minnesota. She has taught in private and public schools, and has been an adjunct professor at a private four-year college in St. Paul, Minnesota. Ms. Jacobsen holds Bachelor's and Master's degrees in education.

Defendant Minnesota State Board of Teaching ("MBOT") is the state agency which has been granted the sole and exclusive responsibility to license teachers in Minnesota. See Minn.Stat. § 125.05(1)(a) (1996). Defendant Michael L. Tillmann is sued in his official capacity as MBOT's Acting Executive Director.

## A. Minnesota's Teacher Qualification System

Under Minnesota law, the MBOT issues teaching licenses to persons who are "qualified and competent," and who "successfully complete an examination of skills in reading, writing, and mathematics." Minn.Stat. § 125.05(1a)(a) and (b). According to defendants, the purpose of this basic skills examination is to "determine objectively if applicants for an initial teaching license, regardless of the grade level or subject taught, have adequate skills in reading, writing and mathematics to meet the needs of the students whom they serve." (Defs.Mem., p. 6.)

In order to make this objective determination, the MBOT, in 1987, adopted the Pre-Professional Skills Test ("PPST") as the examination of reading, writing, and mathematics required for initial teacher licensure. The examination was developed by the Educational Testing Service ("ETS"), a national testing organization based in Princeton, New Jersey. The PPST consists of three separate tests designed to assess basic proficiency in reading, writing, and mathematics.

Eighteen other states, as well as the District of Columbia, use the PPST for teacher licensure. Minnesota's PPST passing score for mathematics is 169, as established by the MBOT. Arkansas, Mississippi, and Tennessee have also set their PPST passing scores for mathematics at 169. The lowest passing score adopted by any state is 169.

Under Minnesota law, applicants who cannot pass the PPST may obtain a one-year provisional teaching license. This provisional license can be renewed for two additional one-year periods. The extension is granted if the prospective teacher "provid[es] evidence of participating in an approved remedial assistance program ... that includes a formal diagnostic component in the specific areas in which the licensee did not obtain qualifying scores." Minn.Stat. § 125.05 (1a)(c)(1). The prospective teacher must also

---

**2.** Dyslexia is defined as the "inability to read, spell, and write words, despite the ability to see and recognize letters." *Dorland's Illustrated Medical Dictionary* 516 (W.B. Saunders Co. 28th ed.1994).

**3.** Dyscalculia is defined as the "impairment of the ability to do mathematical problems because of brain injury or disease." *Dorland's Illustrated Medical Dictionary* 514 (W.B. Saunders Co. 28th ed.1994).

attempt to successfully complete the basic skills examination during the period of each one year license. *See* Minn.Stat. § 125.05 (1a)(c)(2).

The MBOT can also permit a school district, upon request, to hire "non-licensed community experts" to teach in public schools. *See* Minn.Stat. § 121.611, subd. 1 and 2 (1997).[4] If a district seeks non-licensed community experts, the MBOT must consider the proposed candidate's qualifications, teaching hours, teaching responsibility, and compensation. *See* Minn.Stat. § 121.611, subd. 2, ¶¶ (1), (4), (5), and (7). It also considers the district's need for a variance, its efforts to obtain acceptable licensed teachers, and the extent to which the district already relies on non-licensed community experts. *See* Minn.Stat. § 121.611, subd. 2, ¶¶ (2), (3), and (6).

### B. *The Plaintiff*

In 1987, the plaintiff began attending Minneapolis Community College and received an Associate of Arts degree. Thereafter, she transferred to Augsburg College to prepare for a teaching career. She first attempted the PPST in 1989, and failed the mathematics portion. In 1991, she graduated from Augsburg College, *cum laude*, with a four-year degree in education, and applied for her initial teaching license. Augsburg College supported her license application, in spite of her failure to pass the PPST's mathematics portion.

Plaintiff has taught school since 1991. During the 1991–1992 school year, and into the fall of 1992, plaintiff taught without a license. In December, 1992, she sought a MBOT provisional license, which was issued in October, 1993. She has continued to teach under provisional licenses, conditioned on math tutoring and further efforts to pass the PPST math test.

Her final provisional license expired in 1997, at which time her employer, ISD No. 625, sought a variance from the MBOT for

leave to hire her as a non-licensed community expert. After an initial denial, MBOT granted ISD No. 625 a one-year variance, expiring at the end of the 1997–1998 school year. This allowed plaintiff to teach students as a non-licensed community expert. Additional variances are possible.

Since graduating from Augsburg College, plaintiff has taken, and failed, the PPST math test 13 times, averaging a score of 163. In 1991, she hired a tutor from Learning Disabilities of America to assist her. The tutor worked with the plaintiff twice a week for six months. She still could not pass the PPST. In 1992, she hired another tutor, who had a master's degree in education, with a specialty in learning disabilities and adult instruction. With only minor breaks, this tutor met with plaintiff for one hour each week since 1992. This tutor opines that plaintiff will never pass the PPST math test.

The ETS, the test's author, prescribes certain testing accommodations for examinees who have disabilities. In spite of each accommodation, the plaintiff still failed the PPST.[5] After failing the accommodated test, plaintiff filed a complaint against the ETS, alleging it had failed to provide reasonable test-taking accommodations. Her complaint was heard by the United States Department of Education's Office of Human Rights, which found there was insufficient evidence to establish a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, because the ETS had allowed plaintiff a reader, scratch paper, double time to complete the exam, and the ability to enter answers on the test rather than the answer sheet. The ETS has provided plaintiff test-taking accommodations the last 11 times she has taken the exam, and on each occasion she has failed.

Since the fall of 1992, plaintiff has told the MBOT that her failure to pass the PPST math test results from a learning disability. She has asked the MBOT to waive the PPST

---

**4.** Pursuant to 1998 Minn.Sess.Law Serv. Ch. 397, Minn.Stat. § 121.611 has been renumbered to 125A.01.

**5.** The ETS denied only one requested modification: In 1996, plaintiff asked for 300% of the usual, one hour, examination time. The ETS

asked plaintiff for additional medical documentation to validate this request, but did not receive the documentation. The plaintiff was given 200% of the time for the exam. According to the test's proctor, she used only 1 hour and 35 minutes, completing the test well within the 200% time extension. She did not pass the test.

math requirement or provide an alternative testing method. The MBOT denied these requests in 1992, 1994, 1995, and 1997, stating it lacked legislative authority to grant an alternative testing format.

The plaintiff filed this case on June 30, 1997, the last day before her penultimate provisional license was to expire. Plaintiff claims defendants discriminated against her on the basis of her disability when it maintained its PPST math requirement and refused to substitute an alternative math qualification mechanism. She claims this decision violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.01 *et seq.* She also asserts that defendants' acts have deprived her of civil rights in violation of 42 U.S.C. § 1983.

The complaint also sought, *inter alia,* a temporary restraining order requiring defendants to: (1) extend or reinstate her provisional license, or (2) permit ISD No. 625 to hire her as a "non-licensed community expert" and excuse her from taking the PPST math test, and observe her classroom performance and advise the Court whether it finds her performance satisfactory.

The Court denied plaintiff's motion for a temporary restraining order on July 14, 1997. This matter is now before the Court on defendants' motion to dismiss, according to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

## II. *Discussion*

Defendants claim the Court lacks subject matter jurisdiction and that plaintiff has failed to state a claim upon which relief may be granted. Plaintiff's complaint is accompanied by affidavits and exhibits, which go beyond the pleadings. The defendants' submissions also extend beyond the pleadings.

The Court, having considered these materials, converts this 12(b)(6) motion to one for summary judgment, pursuant to Fed. R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b). Defendants' motion to dismiss for lack of subject matter jurisdiction and motion for summary judgment are considered in turn.

### A. *Subject Matter Jurisdiction*

■ The defendants seek dismissal, asserting plaintiff's claims are not ripe. The Court does not agree. When her motion was submitted, plaintiff was teaching, and it was possible to renew her non-licensed community appointment. As of the date of this Order, the 1997–1998 school year has concluded, and the Court has not been advised of a reappointment. Beyond this, the Court notes plaintiff's assertions that her claim is susceptible to repetition—considering her prior PPST examination history, a successful examination is unlikely in the extreme—and that she will be without a teaching license as another school year approaches. According to plaintiff, ISD No. 625 cannot assure her a teaching position if she is not licensed or given a waiver. Under these circumstances, the Court finds a "reasonable likelihood" that plaintiff will again face the present situation. *See Honig v. Doe,* 484 U.S. 305, 319, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) Accordingly, the Court finds it has subject matter jurisdiction.

### B. *Summary Judgment*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See Anderson,* at 248–49, 106 S.Ct. 2505; *see also Hartnagel v. Norman,* 953 F.2d 394, 395–96 (8th Cir.1992). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *City of Mt. Pleasant v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir.1988). In reviewing the evidence, the Court must treat the facts alleged in the non-moving party's

pleadings and affidavits as true, and resolve all factual disputes in favor of the non-moving party. *See Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir.1992).

### 1. *ADA and MHRA Claims*[6]

The plaintiff claims the MBOT's requirement that teachers pass the PPST deprives her of rights protected by Title II of the ADA, 42 U.S.C. § 12101 *et seq.* as well as by the MHRA, Minn.Stat. 363.01 *et seq.* Since MHRA claims are subject to the same analysis as federal civil rights claims, the Court considers the ADA and MHRA claims together. *See Snow v. Ridgeview Medical Center*, 128 F.3d 1201, 1207 (8th Cir.1997); *Thompson v. Board of the Special School Dist. No. 1*, 144 F.3d 574, 580 (8th Cir.1998).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by a public entity." 42 U.S.C. § 12132.

To make out a prima facie case for a violation of the ADA, the plaintiff must demonstrate that she is disabled within the meaning of the ADA. *See Olson v. Dubuque Community School District*, 137 F.3d 609, 610 (8th Cir.1998). Disability under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff's dyslexia and dyscalculia are learning disabilities within the ADA's contemplation.

To establish a violation of the ADA, however, plaintiff bears an obligation to demonstrate "1) [she] is a qualified individual with a disability; 2)[she] was excluded from participation in or denied the benefits of a public entity's services, programs, or activi-

ties, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial or other discrimination, was by reason of [her] disability." *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir.1998).

Plaintiff claims the MBOT has wrongfully denied her a teacher's license by failing to provide an examination that accurately measures her math skills. In her view, the PPST's math section bears no relationship to the essential functions of a elementary school teacher; effectively subjects individuals with learning disabilities to discrimination; and is used by the MBOT as the single criterion for licensure, despite recommendations to the contrary.

The defendants argue that plaintiff has failed to establish the first ADA test: she has not demonstrated that she is a "qualified individual," as defined in 42 U.S.C. § 12132. The defendants argue that to be qualified, an individual must be able to pass the PPST either directly or with reasonable accommodations. The MBOT claims the plaintiff is unable to do so, and if the MBOT granted her a license, it would violate its statutory charter.

To determine whether the plaintiff is a "qualified individual" under the ADA, the Court must first determine whether the PPST is an essential eligibility requirement for teacher licensure. If the requirement is essential, the Court must determine whether plaintiff meets this requirement with or without reasonable accommodations. *See Pottgen v. Missouri State High School Activities Ass'n.*, 40 F.3d 926, 930 (8th Cir.1994).

Minnesota state law requires that MBOT choose an examination to evaluate the skills of reading, writing, and mathematics as part of the state licensure process for teachers. *See* Minn.Stat. 125.05, subd. 1a(b). MBOT has chosen the PPST. A court grants

---

6. The MBOT claims it is immune from a suit under the ADA on Eleventh Amendment grounds. In *Autio v. AFSCME, Local 3139*, 140 F.3d 802 (8th Cir.1998), an Eighth Circuit panel held that a state could not claim ADA Eleventh Amendment immunity. The *Autio* opinion was vacated on July 7, 1998, when the Eighth Circuit accepted *Autio* for consideration, *en banc*. The MBOT further argues it is immune from MHRA

suit in federal court, again on Eleventh Amendment grounds. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

As this is a suit for injunctive relief, however, and not one for damages, the Court assumes the MBOT's Eleventh Amendment immunity, if any, would not bar federal actions against it under either the ADA or MHRA, in either case.

a Minnesota state agency, specifically charged with enforcing a particular area of state law, a deferential standard of review. *See Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

 Here, the Court considers the MBOT to be such an agency. This view is bolstered by the fact that 19 other states, including the District of Columbia, use the same PPST examination. Under these circumstances, and granting the MBOT the deferential standard of review to which it is entitled, the Court cannot gainsay that the PPST is a proper measure for teacher examination. Moreover, this determination is in accord with the Fifth Circuit in *United States v. LULAC,* 793 F.2d 636, 639 (5th Cir.1986), which specifically found the PPST to be a valid measurement of teacher skills.·

 The objective ability to perform and demonstrate math skills is an inherent part of a teacher's duties. The State, which publicly validates the competence of a teacher by issuing a license, is entitled to demand and receive an objective demonstration of competence. "While a public entity shall not impose eligibility criteria that tend to screen out an individual with a disability, it may do so if 'such criteria can be shown to be necessary for the provision of the ... activity being offered.'" *Pottgen,* 40 F.3d at 931 n. 6 (quoting 28 C.F.R. § 35.130(b)(8)). Thus, the Court finds that the PPST is an essential eligibility requirement for teacher licensure in the State of Minnesota.

 The second ADA test requires that the Court inquire whether plaintiff meets the eligibility requirement with or without reasonable accommodations. She does not. The PPST she has taken—and cannot pass— is a valid measure of math teaching competency. The test's reasonable accommodations have been considered by the Office of Human Rights of the United States Department of Education, an agency charged with assuring their fairness, and have not been found wanting. As a result, the MBOT has properly denied plaintiff a teacher's license.

At oral argument, plaintiff sought to analogize her case to that of Casey Martin, the professional golfer who was barred from PGA tournaments. Mr. Martin requires a golf cart to move about a golf course because of a condition resulting in congenital leg weakness. The PGA Tour, claiming that walking was part of the game, barred his use of a golf carts. He sued, claiming he was deprived of a reasonable accommodation. *See Martin v. PGA Tour, Inc.* 994 F.Supp. 1242 (D.Or.1998). The comparison is inapposite.

The magistrate judge in *Martin* found that the ability to plan and execute golf shots was an inherent part of the game of golf, as opposed to the ability to walk distances, which he found was incidental to the game. *See id.* at 1249, 1252. When given his requested accommodation, Martin was able to perform his chosen work. This is entirely unlike the plaintiff's case.

Martin did not ask to be relieved of the need to demonstrate an ability to execute his middle iron prowess, or to be relieved of the need to putt. The objective ability to perform and demonstrate math skills is an inherent part of a teacher's duties. Unlike ·Martin, the plaintiff has been granted all of the recognized accommodations that are available, and she is still unable to perform. The plaintiff is not asking for an accommodation, she is asking to be relieved of the need .to demonstrate an essential and inherent element of competence in the field for which she seeks to practice.

The plaintiff's situation can be properly analogized to a law school graduate who cannot pass the bar examination, or a medical school graduate who cannot pass the "boards." The person may be able to perform the task—whether or not they can pass the examination. But, again, the state which publicly validates the professional's competence by awarding its license, is entitled to demand and receive an objective demonstration of competence in the particular field of endeavor. The plaintiff, even with a full panoply of reasonable accommodations, is simply unable to objectively demonstrate math competence by passing a properly chosen and administered test. In Minnesota, and many other states, it is one thing to be permitted to take a teacher's professional qualification test; but it is quite another to be able to pass the examination and receive a license to teach the children of the State. The

State is not obligated to certify teachers who cannot pass fair and valid tests of basic skills. *See LULAC,* 793 F.2d at 639.

 ADA regulations require a public entity to "make reasonable modifications in policies ... when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service." 28 C.F.R. § 35.130(b)(7); *see also DeBord v. Board of Educ. of Ferguson–Florissant School Dist.,* 126 F.3d 1102, 1106 (8th Cir.1997). The Court finds plaintiff's request for waiver of the math portion of the PPST an unreasonable modification that would fundamentally alter the nature of Minnesota's certification of qualified individuals a license to teach the children of the State. Therefore, the Court grants summary judgment in favor of defendants on plaintiff's ADA and MHRA claims.

### 2. *Civil Rights Claim*

■ To establish a deprivation of civil rights, under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the Constitution or federal statute and show a loss of that right under color of state law. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Section 1983 confers no substantive rights, but merely provides a vehicle for vindicating federal rights conferred elsewhere. *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The plaintiff has, necessarily, premised her § 1983 claim on her asserted ADA deprivation. One cannot premise a claim of constitutional deprivation on an asserted right which one does not possess. Therefore, in light of the dismissal of her ADA claims, the plaintiff's § 1983 claim necessarily fails as well.

### III. *Conclusion*

Based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

Defendants' motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.