**Barbara BAILEY, Plaintiff,**

v.

**Alan ANDERSON, Director of Vehicles, Department of Revenue of the State of KS, Defendant.**

**No. 97–4149–RDR.**

United States District Court,
D. Kansas.

Dec. 14, 1999.

Stacey L. Cooper, Robin K Reed, Topeka, KS, Kenji S. Zweygardt, Oskaloosa, KS, for Barbara Bailey, plaintiff.

Joseph Brian Cox, Kansas Department of Revenue, Topeka, KS, for Betty McBride, Director of Vehicles, Department of Revenue of the State of Kansas, defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon long-pending cross-motions for summary judgment. This case challenges restrictions placed upon plaintiff's ability to obtain an instruction permit to drive a car. The following facts appear uncontroverted.

Plaintiff has poor vision as a result of a condition which a Dr. Carney diagnosed as "aniridia" in 1995. As of July/August 1995, plaintiff's eyesight was 20/400 in the right eye and 20/200 in the left eye with regular lenses. But, her left eye was corrected to 20/40+ with a device called a bioptic telescope. About that time in 1995, plaintiff inquired of defendant regarding applying for a driver's license. Up to that time, plaintiff had never had or applied for a driver's license in any state.

On August 21, 1995, defendant wrote plaintiff and authorized plaintiff to take a driving test for the issuance of an instruction permit or full driving privileges. Defendant stated that plaintiff also would need to submit an annual vision report as a condition. Plaintiff did not want to take a driving test and opted only for an instruction permit. Defendant authorized plaintiff to make application for an instruction permit without taking a driving test. It is controverted whether this was a mistake in the application of existing policy or whether the policy changed the following year when plaintiff sought renewal of the instruction permit.

In October 1995, plaintiff made application for an instruction permit. Such a permit allows the holder to drive with a licensed adult in the vehicle. Plaintiff checked a box on the application indicating that she had a condition which would make it difficult to operate a motor vehicle safely. However, she also referred to a vision report from Dr. Carney. Dr. Carney stated that plaintiff could safely operate a motor vehicle and did not recommend driver training.

On October 11, 1995, plaintiff was issued a one-year instruction permit without taking a driving test. The permit had no restriction requiring a report of plaintiff's driving ability. When the permit expired in October 1996, plaintiff submitted a visual acuity report from a Dr. Krug dated October 16, 1996. The report indicated that her eyesight was 20/260 in the right eye and 20/160 in the left eye with her present lenses, but that her left eye was corrected to 20/50 with a bioptic telescope.

Dr. Krug labeled plaintiff's condition as "nystagmus/aniridia, glaucoma" and recommended a driver's instruction program. Plaintiff has admitted the merits of the

recommendation. Plaintiff felt at that time that she was not ready to drive by herself without more practice with a licensed driver.

On October 18, 1996, defendant permitted plaintiff to continue her application for renewal of her instruction permit. Defendant also ordered the following:

> We will require a report of your driving ability from your Instructor before authorization to secure a driver's license will be granted. Once this information is received, it will be reviewed and a recommendation will be made regarding the requirements for the issuance of a driver's license.
>
> Failure to submit the requested report within sixty (60) days of the date of our letter will warrant the revocation of your instruction permit, which we hope does not become necessary.

Another one-year instruction permit was issued by defendant to plaintiff on or about November 13, 1996. Defendant expected a progress report from plaintiff's instructor on how plaintiff's training progressed.

Plaintiff only saw the instructor once. She thought he had no knowledge of how to drive with a bioptic telescope, and he made plaintiff very uncomfortable. On December 18, 1996, plaintiff requested an extension of time on her instruction permit. She was informed by defendant's assistant that an extension of only 30 days could be authorized. Plaintiff thought that was not enough time but lodged no formal objection. Ultimately, plaintiff never submitted a report regarding her driver's training.

On February 7, 1997, defendant issued an order revoking plaintiff's instruction permit for failure to comply with the October 18, 1996 order. The order indicated, incorrectly, that the reason for the revocation was plaintiff's failure to submit an acceptable vision report. On March 14, 1997, defendant issued a letter indicating the correct reason for the revocation was plaintiff's failure to submit a report regarding her driving ability.

Plaintiff was offered an administrative show cause hearing to demonstrate why her driving privileges should not be revoked. Plaintiff accepted the offer of the hearing and indicated that she had filed a complaint of disability discrimination with the Department of Justice.

Plaintiff had the right to counsel, the right of subpoena power, and the right to confront witnesses at the hearing. After the hearing, the administrative hearing officer recommended affirming the revocation of the driving permit. Defendant adopted this recommendation and refused to reinstate the driving permit until plaintiff obtained driving instruction. Plaintiff did not appeal this determination.

Dr. Krug is an optometrist specializing in low-vision rehabilitation. He is familiar with bioptic telescopes. He has stated that the bioptic telescope does not correct a visual defect but improves the level of function. He stated that with the telescope the object being looked at is enlarged, but the field of vision is reduced to about ten degrees from the normal field of about 120 degrees. The bioptic telescope is used like a bi-focal lens where one tips his head down to look through the bioptic lens when the need arises. One should look through the bioptic telescope only 10 to 20% of the time for the purpose of spotting. It is important that a person learn to use a bioptic telescope until it becomes second nature while a person is driving.

Dr. Krug recommended that plaintiff attend a driver's instruction program as a condition to obtaining a driver's permit and as a prerequisite for driving safely. He has estimated that it would take between 5 to 20 hours of behind-the-wheel training in addition to a one to two-hour evaluation for a person to become adequately trained to operate a motor vehicle using a bioptic lens.

## THE CLAIMS OF THE PARTIES

According to the final pretrial order, plaintiff's claim in this case is that defen-

dant violated the Americans with Disabilities Act ("ADA") by imposing a driving evaluation requirement not imposed upon non-disabled drivers. Defendant denies that this action violated the ADA. Defendant further contends that plaintiff is collaterally estopped from raising this claim and that application of the ADA against the State of Kansas violates the Tenth Amendment to the Constitution.[1]

## SUMMARY JUDGMENT STANDARDS

In considering the instant summary judgment motions, the court must examine all the evidence in the light most favorable to the nonmovant. *Barber v. General Electric Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings ..." to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence will not avoid summary judgment; there must be suffi-

cient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. 2505 (quoting *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

## ADA

The ADA provides that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Underlying regulations to the ADA prohibit public entities from "administer[ing] a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6). A "qualified individual with a disability" means "an individual with a disability, who with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

## ANALYSIS

When plaintiff applied for an instruction permit in 1995, her vision report from Dr. Carney did not recommend that plaintiff be trained in using a bioptic telescope while driving. He did recommend an annual vision report. When plaintiff applied for an instruction permit in 1996, her vision report from Dr. Krug did recommend a driver's instruction program. Both doctors marked "yes" on the vision reports, affirming the statement that "this person can safely operate a motor vehicle at this time insofar as this person's vision is concerned." In 1996, defendant decided to make participation in a driver's instruction program and a progress report from the program conditions for having and keeping an instruction permit.

---

1. Defendant has stated that plaintiff has withdrawn any "surcharge" claim or other claim connected with the cost of training. Plaintiff has not denied this statement and such a claim does not appear in the final pretrial order. Accordingly, the court shall not consider such a claim as part of this case.

■ The court disagrees with plaintiff's contention that the addition of the progress report condition amounted to illegal discrimination under the ADA. We find the case of *Theriault v. Flynn,* 162 F.3d 46 (1st Cir.1998) persuasive. In *Theriault,* the plaintiff suffered from cerebral palsy but had held a driver's license and driven safely using hand controls for eight years. When the defendant required the plaintiff to take a road test as a condition to renewing his license, the plaintiff sued. The condition was imposed because the licensing officer noticed that the plaintiff had much difficulty controlling his hand movements. The plaintiff objected because of his safe driving history and because he had represented without contradiction that his condition had not grown worse since he first was granted a driver's license.

The majority opinion in *Theriault* held that it was not discrimination for the defendant to require an additional test of the plaintiff's ability to drive safely when the possible threat to safety was clearly observable to defendant and not based on stereotypes. The majority opinion considered the road test to be a permissible screening procedure to determine whether a person was "qualified" to participate in a state program, not discrimination. The concurring opinion in *Theriault* held that it was discrimination under the ADA, but that it was legal discrimination because it was necessary to the licensing process. The concurring opinion cited 28 C.F.R. Pt. 35 App. A at 477 which bars standards that discriminate against "qualified individuals with disabilities *in an impermissible manner.*" (emphasis added). See also, 28 C.F.R. § 35.130(b)(7) & (8) (permitting changes in policy or imposition of criteria which impinge upon participation of persons with disabilities if such changes or criteria are necessary to the program in question. Finding that the ability to require a road test and not rely upon the

applicant's representation of driving ability was necessary to accomplish the mission of protecting public safety, the concurring opinion found that there was no violation of the ADA.

Under either approach in *Theriault,* summary judgment should be granted to defendant. Defendant is authorized under state law to impose reasonable restrictions on a person's driving privileges. K.S.A. 8–245 provides:

> (a) The division, upon issuing a driver's license shall have authority, whenever good cause appears, to impose reasonable restrictions suitable to the licensee's driving ability with respect to the type of, or special mechanical control devices required on, a motor vehicle which the licensee may operate, or such other restrictions applicable to the licensee as the division may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee.

The recommendation of Dr. Krug provided clear and convincing grounds to require that plaintiff obtain instruction in using the bioptic telescope while driving and that defendant receive a progress report.[2]

When plaintiff failed to comply with this condition, defendant was authorized by law to revoke the license. K.S.A. 8–245(c) ("Upon receiving satisfactory evidence of any violation of the restrictions of such license, the division may suspend or revoke the same . . .").

We believe the defendant's actions in this case should be considered as required to determine plaintiff's qualifications to be a driver or necessary to accomplish the purpose of the driver's license program. Accordingly, we find that there was no violation of the ADA.

Defendant has also asked for summary judgment on estoppel and Tenth Amendment grounds. We reject both arguments.

---

**2.** At least two states have prohibited drivers who need bioptic telescopes to correct their vision from obtaining driver's licenses and no violation of the Rehabilitation Act or the Constitution was found. *Sharon v. Larson,* 650

F.Supp. 1396 (E.D.Pa.1986); *Department of Transportation v. Liberati,* 80 Pa.Cmwlth. 519, 472 A.2d 741 (1984); *Gooch v. Iowa Department of Transportation,* 398 N.W.2d 845 (Iowa 1987).

Regarding estoppel, defendant contends that plaintiff should be estopped from bringing this action because she lost her administrative challenge to the revocation of the instruction permit and then did not appeal. In Kansas, one of the requirements for collateral estoppel is that there be "a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment." *Huelsman v. Kansas Dept. of Revenue*, 980 P.2d 1022, 1024 (Kan.1999) (quoting *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988)). The record before the court does not establish to the court's satisfaction for summary judgment purposes that the administrative hearing adjudicated the ADA issues presented by the instant case. See also, *Thomas v. Contoocook Valley School District*, 150 F.3d 31, 39 n. 5 (1st Cir.1998) (judicially unreviewed state agency determinations are not entitled to preclusive effect in an ADA action).

■ Regarding the Tenth Amendment, we view the ADA as a valid exercise of Congress' powers under the Fourteenth Amendment. Therefore, we shall reject defendant's argument that the ADA is an unconstitutional infringement upon the powers reserved to the states under the Tenth Amendment. See *Dare v. California*, 191 F.3d 1167, 1176 (9th Cir.1999); see also, *Martin v. Kansas*, 190 F.3d 1120 (10th Cir.1999) (ADA is a proper exercise of Fourteenth Amendment authority and does not violate the Eleventh Amendment).

## CONCLUSION

The court shall grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**