Susan **BRIGGS**, Plaintiff,

v.

Sheila **WALKER**, Director of Vehicles, Department of Revenue of the State of Kansas, Defendant.

No. 99–4064–SAC.

United States District Court, D. Kansas.

Feb. 15, 2000.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant's motion to dismiss for failure to state a claim upon which relief can be granted. (Dk.6). Alleging she is a "qualified individual," as defined by 28 C.F.R. § 35.130(b)(6), the plaintiff brings this action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* seeking declaratory and injunctive relief against the defendant Director of Vehicles of the Kansas Department of Revenue. The plaintiff, who uses a wheelchair for mobility, alleges that the defendant violated the ADA in not allowing her to take the written examination and obtain an instruction permit to drive under K.S.A. § 8–236 without first submitting a completed medical certification form. The plaintiff further complains that the defendant violates the ADA in enforcing this medical certification requirement only on permit applicants with visually apparent disabilities. The defendant seeks dismissal contending the plaintiff is unable to allege and prove that she is otherwise qualified for the defendant's instruction permit program, that the defendant's requirement of a prior medical certification form is not justified by legitimate public safety concerns, that she was denied meaningful access to the instruction permit program, or that the defendant's enforcement of the requirement against applicants with visually apparent disabilities is actionable discrimination.

## RULE 12(B)(6) STANDARDS

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law

Stacey L. Cooper, Topeka Independent, Living Resource Center, Topeka, KS, Cecilia T. Mariani, Topeka Independent, Living Resource Center, Topeka, KS, for plaintiff.

Joseph Brian Cox, Kansas Department of Revenue, Topeka, KS, for defendant.

is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma,* 944 F.2d 752, 753 (10th Cir.1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.") (citations omitted). The Tenth Circuit has observed that the federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Maez v. Mountain States Tel. and Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)).

A court judges the sufficiency of the complaint accepting as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), and drawing all reasonable inferences from those facts in favor of the plaintiff. *Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir.), *cert. denied,* 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998); *see Southern Disposal, Inc. v. Texas Waste Management,* 161 F.3d 1259, 1262 (10th Cir.1998) (court "need not accept ... conclusory allegations as true."). It is not the court's function "to weigh potential evidence that the parties might present at trial." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties ... [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). Written documents attached to the complaint as exhibits are considered part of the complaint and may therefore be considered in connection with a motion to dismiss under Rule 12(b). *Hall v. Bellmon,* 935 F.2d at 1112 (citing Fed.R.Civ.P. 10(c)). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997).

**TITLE II LAW**

Title II of the ADA provides that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Under Title II, a 'qualified individual with disability' is someone with a disability who 'with or without reasonable modifications ... meets the essential eligibility requirements' to receive public services or participate in a public program." *McGuinness v. University of New Mexico,* 170 F.3d 974, 978 (10th Cir. 1998) (citing 42 U.S.C. § 12131(2)), *cert. denied,* —— U.S. ——, 119 S.Ct. 1357, 143 L.Ed.2d 518 (1999). "The protection af-

forded by the ADA is characterized as a guarantee of 'meaningful access' to government benefits and programs, ..., which broadly means that public entities must take reasonable steps to ensure that individuals with disabilities can take advantage of such public undertakings." *Theriault v. Flynn,* 162 F.3d 46, 48 (1st Cir.1998) (citations omitted).

Congress directed the Department of Justice ("DOJ") to promulgate regulations "that implement" Title II. 42 U.S.C. § 12134(a); *Marcus v. State of Kansas, Dept. of Revenue,* 170 F.3d 1305, 1306 (10th Cir.1999). These implementing regulations appear at 28 C.F.R. §§ 35.101, *et seq.,* and "are entitled to substantial deference." *Marcus,* 170 F.3d at 1306 n. 1. The regulations include the following with respect to licensing programs administered by public entities:

> A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability.

28 C.F.R. § 35.130(b)(6).

The general standard applicable to Title II claims requires the plaintiff to prove:

(1) that he [or she] is a qualified individual with a disability;

(2) that he [or she] was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;

(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright,* 186 F.3d 1216, 1219 (10th Cir.1999) (quoting *Tyler v. City of Manhattan,* 849 F.Supp. 1429, 1439

(D.Kan.1994), *aff'd,* 118 F.3d 1400 (10th Cir.1997)); *see Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998). For purposes of this motion, the defendant concedes the second requirement but contends the plaintiff, at present, can prove no set of facts in support of the first and third requirements.[1]

## ANALYSIS

### *Qualified Individual with a Disability*

Title II defines a qualified individual with a disability to mean:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). "In the context of licensing or certification, a person is 'qualified' and thus within the protected category if he or she can meet the 'essential eligibility requirements' for receiving the license or certification, with accommodation made for the disability." *Theriault v. Flynn,* 162 F.3d at 48; *see* 28 C.F.R. pt. 35, App. A, at 486 (1999). There are essentially two questions underlying this determination. The first is whether a completed medical examination form which includes a certification from a physician that the applicant is capable of safely operating a motor vehicle is an essential eligibility requirement for an instruction permit to drive under K.S.A. § 8–239. The second is whether the plaintiff met this requirement, with or without reasonable accommodations, in the event that it is an essential eligibility requirement. *See Jacobsen v. Tillmann,* 17 F.Supp.2d 1018, 1024 (D.Minn.1998).

---

1. Concerning the first requirement, the defendant's challenge is not with whether Briggs is an "individual with a disability" but whether she is qualified to receive the driving instruction permit.

The plaintiff contends she is qualified as she meets the eligibility requirements of being at least fourteen years of age and passing a written and visual examination. She alleges compliance "with all of the requirements defendant permitted her to attempt before submitting the medical certification." (Dk.9, ¶ 7–8). Pointing at different statutory and regulatory provisions, the defendant argues that an applicant's ability to operate a vehicle safely is a requirement for an instruction permit to drive and that the plaintiff has not alleged she met this requirement.

█ It is the law in Kansas that "[n]o person, except those expressly exempted, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license." K.S.A. 8–235(a). Kansas provides for instruction permits to drive on the following terms:

> Any person who is at least 14 years of age may apply to the division for an instruction permit. *The division may in its discretion, after the applicant has successfully passed all parts of the examination other than the driving test, issue to the applicant an instruction permit* which shall entitle the applicant while having such permit in such person's immediate possession drive a passenger car upon the public highways for a period of one year subject to the restrictions herein contained. . . . The one having the instruction permit may operate a passenger car at any time when accompanied by an adult who is the holder of a valid commercial driver's license, class B or C driver's license, who has had at least one year of driving experience and who is occupying a seat beside the driver.

8–239(a) (italics added). Applications for instruction permits to drive are addressed in the following provision:

> (a) Every application for an instruction permit shall be made upon a form furnished by the division of vehicles and accompanied by a fee of $2 for class. . . . The examination shall consist of three

tests, as follows: (1) Vision; (2) written; and (3) driving. . . .

> . . . .

> (c) Every application shall state the name, date of birth, sex and residence address of the applicant, and briefly describe the applicant, and shall state whether the applicant has theretofore been licensed as a driver, and, if so, when and by what state or country, and whether any such license has ever been suspended or revoked, or whether an application has ever been refused, and, if so, the date of and reason for such suspension, revocation, or refusal. . . .

K.S.A. 8–240. In sum, an applicant may not receive an instruction permit without first satisfying all the same examination requirements for a driver's license, except the actual driving test. Moreover, the defendant expressly retains the discretion to issue an instruction permit even after the applicant passes these examination requirements.

The court looks to other statutory provisions in understanding what are the related examination requirements for an instruction permit and whether an applicant's ability to operate safely a motor vehicle is a factor that would inform the defendant's discretion in issuing an instruction permit. One such provision is K.S.A. 8–234b, which reads in relevant part:

> (b) Every applicant for an original driver's license shall indicate on such person's application the class or classes of motor vehicles for which the applicant desires a license to drive, and the division shall not issue a driver's license to any person unless such person has demonstrated satisfactorily ability to exercise ordinary and reasonable control in the operation of motor vehicles in the class or classes for which the applicant desires a license to drive. . . .

This requirement that an applicant demonstrate the ability to exercise control is repeated as part of the general examination requirements in K.S.A. 8–235d:

Such examination shall include a test of the applicant's eyesight, the applicant's ability to read and understand highway signs regulating, warning and directing traffic, the applicant's knowledge of the traffic laws of this state and shall include an actual demonstration of ability to exercise ordinary and reasonable control in the operation of motor vehicles which the class of license applied for would entitle the applicant to drive.

Whenever it "has good cause to believe" that a licensed driver "is incompetent or otherwise not qualified to be licensed," the defendant may require the driver to submit to examination. K.S.A. § 8–241(a). The defendant is authorized to impose reasonable restrictions on a person's driving privileges:

(a) The division, upon issuing a driver's license shall have authority, whenever good cause appears, to impose reasonable restrictions suitable to the licensee's driving ability with respect to the type of, or special mechanical control devices required on, a motor vehicle which the licensee may operate, or such other restrictions applicable to the licensee as the division may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee.

K.S.A. § 8–245(a). Finally, the defendant has the following discretion with respect to applicants for renewal of licenses:

(6) When the division has good cause to believe that an applicant for renewal of a driver's license is incompetent or otherwise not qualified to operate a motor vehicle in accord with the public safety and welfare, the division may require such applicant to submit to such additional examinations as are necessary to determine that the applicant is qualified to receive the license applied for . . . .

K.S.A. § 8–247(e)(6). As reflected in these statutes, the defendant's examination of applicants includes a determination whether the applicant is able or will be able to operate a vehicle safely. When it has good cause to believe that an applicant is not so qualified, the defendant has the discretion to require additional examinations to make that determination. Also when there is good cause, the defendant may impose reasonable restrictions suitable to the applicant's driving ability to assure the safe operation of a motor vehicle.

■ The plaintiff reads K.S.A. § 8–239 on instruction permits as separate from and without reference to any other provisions under the Kansas Motor Vehicle Drivers' License Act, K.S.A. § 8–234 *et seq.* The court rejects that reading as unduly narrow and unsupported by the general terms of the Act. Section 8–239(a) expressly incorporates "all parts of the examination" and excludes only the "driving test." The statutes treat the "driving test" as a way for an applicant to actually demonstrate the ability to operate a vehicle safely. It seems an unreasonable stretch, however, to infer that by excluding the driving test, § 8–239 is precluding the defendant from giving any consideration to whether the applicant will be able to operate a vehicle safely. Indeed, § 8–239(a) leaves the issuance of an instruction permit in the defendant's discretion. The Act necessarily informs the exercise of any such discretion and makes relevant, upon good cause, the considerations whether the applicant will be able to operate a vehicle safely, whether to require additional examinations in making that determination, and whether to impose reasonable restrictions suitable to the applicant's driving ability to assure the safe operation of a motor vehicle. When a particular case properly triggers these considerations, § 8–239 incorporates a requirement that an applicant for an instruction permit demonstrate he or she will be able to operate a vehicle safely.

The plaintiff's allegation of being qualified goes no further than to assert that she meets the essential eligibility requirements gleaned from her narrow reading of K.S.A. § 8–239. For the reasons stated above, the court reads the same statute as imposing additional requirements. The court concludes that the plaintiff has not alleged

sufficient facts on which to find that she meets the statutory requirements for an instruction permit. There is no allegation that the defendant was without good cause to inquire whether the applicant would be able to operate a vehicle safely and to require additional documentation in making that determination. Thus, the plaintiff's allegations of being over fourteen and willing to take the written examination does not suffice in showing that she meets the requirements for an instruction permit under K.S.A. § 8–239.[2]

Even if the court accepted the plaintiff's reading of § 8–239, the court would still conclude that an applicant's ability to safely control a motor vehicle was an essential eligibility requirement for the privilege to operate a motor vehicle. Federal regulations openly recognize that some activities trigger safety questions which, in turn, affect eligibility requirements:

> For other activities, identification of the "essential eligibility requirements" may be more complex. Where questions of safety are involved, the principles established in § 36.208 of the Department's regulation implementing title III of the ADA, . . ., will be applicable. That section implements section 302(b)(3) of the Act, which provides that a public accommodation is not required to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of the public accommodation, if that individual poses a direct threat to the health or safety of others.
>
> A "direct threat" is a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services. . . . Although persons with disabilities are generally entitled to the protection of this part, a person who poses a significant risk to others will not be "qualified," if reasonable modifications to the public entity's policies, practices,

or procedures will not eliminate that risk.

> The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an individualized assessment, based on reasonable judgment that relies on current medical evidence or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. . . .

28 C.F.R. pt. 35, App. A at 481–82 (1999); *see* 28 C.F.R. § 36.208; DOJ's Title II Technical Assistance Manual ("Title II TAM") 2.8000 (1993); *Kirbens v. Wyoming State Board of Medicine,* 992 P.2d 1056, 1062–63 (Wyo. 1999) ("The regulatory language establishes that the ADA will not protect a disabled individual whose disability constitutes a direct safety threat to the public."). The Title II TAM presents the licensing of motor vehicles as an activity plainly involving questions of public safety:

> The phrase "essential eligibility requirements" is particularly important in the context of State licensing requirements. While many programs and activities of public entities do not have significant qualification requirements, licensing programs often do require applicants to demonstrate specific skills, knowledge, and abilities. Public entities may not discriminate against qualified individuals with disabilities who apply for licenses, but may consider factors related to the disability in determining whether the individual is "qualified."
>
> ILLUSTRATION: An individual is not "qualified" for a driver's license unless he or she can operate a motor vehicle safely. A public entity may establish

**2.** The plaintiff does not argue alternatively that the requirements of K.S.A. 8–239 are not essential to the instruction permit program or

that they can be reasonably modified as to make her otherwise qualified.

requirements, such as vision requirements, that would exclude some individuals with disabilities, if those requirements are essential for the safe operation of a motor vehicle.

BUT: The public entity may only adopt "essential" requirements for safe operation of a motor vehicle. Denying a license to all individuals who have missing limbs, for example, would be discriminatory if an individual who could operate a vehicle safely without use of the missing limb were denied a license. A public entity, however, could impose appropriate restrictions as a condition to obtaining a license, such as requiring an individual who is unable to use foot controls to use hand controls when operating a vehicle.

A public entity does not have to lower or eliminate licensing standards that are essential to the licensed activity to accommodate an individual with a disability. Whether a specific requirement is "essential" will depend on the facts of the particular case....

ADA TAM II–3.7200 (1993).[3] Finally, courts have had no difficulty accepting the ability to safely control a motor vehicle as an essential eligibility requirement for the privilege of driving or as an essential function of a driver. *See, e.g., Theriault v. Flynn,* 162 F.3d at 48–49; *Myers v. Hose,* 50 F.3d 278, 282 (4th Cir.1995); *Strathie v. Department of Transp.,* 716 F.2d 227, 231–32 (3rd Cir.1983); *Campbell v. Federal Exp. Corp.,* 918 F.Supp. 912, 920 (D.Md. 1996); *Hatch v. Secretary of State of Me.,* 879 F.Supp. 147, 148 (D.Me.1995). In short, the plaintiff has not pleaded the facts showing she is qualified to operate a motor vehicle on public roadways with an instruction permit.

### Discrimination By Reason of Disability

■ The plaintiff argues the requirement of a medical certification is unreasonable, because the defendant can determine her ability to safely operate a vehicle when

3. "The Title II TAM is persuasive authority unless it is plainly erroneous or inconsistent with the DOJ regulations it interprets."

the driving test is administered as part of the original licensing process. The plaintiff further contends that safety risks are limited by the statutory requirement that a licensed driver with one year of driving experience always accompany those driving with an instruction permit.

As a policy matter, the instruction permit program balances the risk of placing inexperienced drivers on the road against the need for them to gain experience and the presence of experienced licensed drivers to assist them. The plaintiff does not explain how this statute and its underlying policy balance consider or account for the unique safety risks being addressed by the medical certification requirement. The driving test administered as part of the subsequent licensing process is too late to address these same unique safety risks arising from a motor vehicle being operated with an instruction permit. The mere allegation that the certification requirement is unreasonable does not create a claim on which relief can be granted.

Relying on recent case law, the court concludes that the plaintiff will be unable to prove that this medical certification requirement constitutes illegal disability discrimination. Two cases support the court's conclusion. *Theriault v. Flynn,* 162 F.3d 46 (1st Cir.1998); *Bailey v. Anderson,* 79 F.Supp.2d 1254 (D.Kan. 1999).

Theriault, who suffered from cerebral palsy and relied on a wheelchair for mobility, sued the state commissioner for requiring him to take a road test as part of his license renewal process when such testing was not a mandatory part of the renewal process for all applicants. The defendant required the road test upon observing the plaintiff's difficulty in controlling his hand movements. Theriault objected that he had already established his eligibility and that additional testing for him because of his observed disability constitutes discrimi-

*Reeves v. Queen City Transp.,* 10 F.Supp.2d 1181, 1186 (D.Colo.1998) (citations omitted).

nation. The district court granted summary judgment for the defendant finding no discrimination against the plaintiff on the basis of disability. In affirming the district court, the court of appeals reasoned:

> We agree with the district court that asking him to demonstrate that his present condition did not interfere with his safe driving ability—in other words, asking him to demonstrate that he remained qualified to drive—was not only permissible but also the state's obligation in balancing the rights of the disabled with the responsibility to ensure safety on the roads....
>
> ....
>
> In the face of a licensing officer's judgment, based on direct observation, that an applicant has a condition that could impact his or her ability to drive safely, we think the Commissioner may reject reliance on an applicant's statement that the condition at issue has not changed materially since his or her license originally was issued or last renewed.... The Commissioner cannot be faulted for erring on the side of caution when safety is at issue, providing, of course, that the triggering judgment is based not on stereotypes but on observable, relevant circumstances.
>
> ... The ADA, however, does not protect disabled individuals from all differences in treatment stemming from their disabilities, and it certainly does not require licensing officials to refrain from evaluating safety risks *because* an applicant appears to be disabled. To the contrary, when the safety of the public at large is implicated, public entities must be permitted some latitude in their judgments that individualized assessments of qualifications are necessary.... In our view, the Commissioner's use of a relatively non-burdensome procedure, properly based on criteria tailored to the ability to drive safely, was a lawful method of determining whether Theriault remained a qualified driver and thus was entitled to a license.

> We recognize that, in so holding, we effectively are saying that it is not "discrimination" within the meaning of the ADA to rely on the symptoms or appearance of a disability to single out a person for an individualized assessment....
>
> .... When, however, symptoms concededly and objectively raise a concern about qualifications—such as significant hand movements in an applicant for a driver's license who operates his vehicle with hand controls—the public entity properly may engage in an individualized inquiry into whether the person is nonetheless qualified without shouldering the burden of defending its "discrimination" as "necessary." *See* 28 C.F.R. § 35.130(b)(8). Indeed, we believe this is why the ADA prohibits discrimination against *qualified* individuals with disabilities. No cognizable discrimination takes place when an objectively appropriate qualifying assessment is required. A different case would be presented, of course, if the state's criteria for qualification were assertedly discriminatory. That is not the case here: the safe-driving standard is accepted as appropriate.

162 F.3d at 49–50 (footnotes and citation omitted). The plaintiff does not distinguish, discuss or even cite the *Theriault* decision in her memorandum.

Bailey suffered from poor vision, but her vision in one eye could be corrected to 20/40+ with a bioptic telescope. She wrote the defendant Kansas Director of Motor Vehicles and received permission to apply for an instruction permit without taking a driving test. Her application was accompanied by a vision report from Dr. Carney who opined that the plaintiff could safely operate a motor vehicle. Bailey received a one-year instruction permit. One year later, the plaintiff believed she needed more practice and applied for a renewal of her instruction permit. The defendant ordered the plaintiff to submit a progress report regarding her driving ability from

her instructor within sixty days or her instruction permit would be revoked. Despite a subsequent thirty-day extension, the plaintiff ultimately never submitted a progress report and her permit was revoked. Relying on *Theriault*, the federal district court granted summary judgment for the defendant:

> Defendant is authorized under state law to impose reasonable restrictions on a person's driving privileges.... The recommendation of Dr. Krug provided clear and convincing grounds to require that plaintiff obtain instruction in using the bioptic telescope while driving and that defendant receive a progress report.

> When plaintiff failed to comply with this condition, defendant was authorized by law to revoke the license....

> We believe that defendant's actions in this case should be considered as required to determine plaintiff's qualifications to be a driver or necessary to accomplish the purpose of the driver's license program. Accordingly, we find that there was no violation of the ADA.

*Bailey v. Anderson*, 79 F.Supp.2d at 1257.

We agree with *Theriault* that the state "in balancing the rights of the disabled with its responsibility to ensure safety on the roads" may ask an applicant to demonstrate that his or her observable condition will not interfere with safe-driving ability. 162 F.3d at 49. The certification form requirement is a reasonable method for an applicant to demonstrate that he or she meets this safe-driving standard. This standard is "objectively appropriate" and is not discriminatory. 162 F.3d at 50; *see Coolbaugh v. State of La.*, 136 F.3d 430, 439 (5th Cir.) (A "decision motivated by a desire to protect the public on the state's highways" is not disability discrimination.), *cert. denied*, 525 U.S. 819, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998). The court simply cannot accept the proposition argued by the plaintiff that whenever an applicant for an instruction permit appears disabled the state is foreclosed under the ADA from reasonably evaluating the safety risks associated with issuing the permit until the applicant tries for a driver's license. "[W]hen the safety of the public at large is implicated, public entities must be permitted some latitude in their judgments that individualized assessments of qualifications are necessary." *Theriault*, 162 F.3d at 50. Like the progress report in *Bailey*, the medical certification form here appears to be a relatively non-burdensome procedure tailored to elicit certain information needed to make an individualized assessment of an applicant's qualifications.[4] In short, the court finds that the medical certification form requirement, as pleaded and argued in this case, does not deny the plaintiff meaningful access to an instruction permit.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss (Dk.6) is granted for the reasons stated above.

---

4. Even if a burden, the court believes the issues of public safety here are so obviously compelling as to show that this burden is necessary for the state to perform its responsibility in issuing instruction permits.